IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JERRY MICHAEL BRUCE, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-1472-JEC-JCF |
| CLASSIC CARRIER, INC., | : | |
| OCCIDENTAL FIRE AND | : | |
| CASUALTY INSURANCE COMPANY | : | |
| OF NORTH CAROLINA, INC. AND | : | |
| QUINTON EUGENE BARGER | : | |
| Defendants. | : | |

## **NON-FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Claim for Lost Wages or Earnings (Doc. 43). Because the Plaintiff is unable to document the material terms of the contemplated employment opportunity or provide any track record of past earnings under the anticipated arrangement, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment on Plaintiff's Claim for Lost Wages or Earnings (Doc. 43) be **GRANTED**.

1

# PROCEDURAL HISTORY

Plaintiff Jerry Bruce ("Plaintiff") alleges he was hurt when a tractor-trailer struck his vehicle on June 11, 2008. (*See* Def.'s Notice of Removal, Doc. No. 1, at ¶ 7). On May 26, 2012, Plaintiff filed a Complaint (Doc. 38-2) in the State Court of Dekalb County alleging that "[a]s a proximate result of Defendants' concurrent negligence, Plaintiff suffered lost income and wages in the approximate amount of at least $200,000.00." (*Id.* at ¶ 16). After removal to this Court, Defendants filed an answer to Plaintiff's Complaint (Doc. 2), and discovery proceeded.

Defendants have now filed a motion for summary judgment, with a supporting brief and exhibits (Doc. 43) and a statement of undisputed material facts (Doc. 43-9). Plaintiff filed a response to Defendants' motion, with a supporting brief and exhibits (Doc. 46), and a response to Defendants' statement of undisputed material facts (Doc. 46-2). Defendants filed a reply brief (Doc. 48).

# FACTS

The facts, for summary judgment purposes only, are derived from Defendants' Statement of Material Facts as to Which There is no Genuine Issue to be Tried in Support of Their Motion for Summary Judgment on the Plaintiff's Claim for Lost Wages or Earnings (Doc. 43-9) (hereinafter "Def. SMF");

Plaintiff's response to Defendants' statement of material facts (Doc. 46-2); and uncontroverted record evidence.

The undersigned has reviewed the record, including the parties' filings, to determine whether genuine issues of material fact exist to be tried. However, the court is not obligated to "scour the record" to make that determination. *Tomasini v. Mt. Sinai Med. Ctr. of Fla.*, 315 F.Supp.2d 1252, 1260 n.11 (S.D. Fla. 2004) (internal quotation omitted). The facts are construed in the light most favorable to Plaintiff as the non-movant. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1309 (11th Cir. 2001).

On June 11, 2008, the day of the accident that forms the basis of this lawsuit, Plaintiff was self-employed through a business he owned called Global Business Consultants ("GBC"). (Def. SMF at ¶ 1). GBC performed consulting services and concentrated on advising small businesses. (Ex. A to Doc. 46). Plaintiff's tax returns for 2006 and 2007 reflect that he did not earn any wages or salary from GBC or any other business venture during those years. (Def. SMF at ¶ 4).

In late 2007 or early 2008, Herb Bruister ("Bruister"), who was representing a company called FutureTech, received information which indicated that Comcast Cable intended to expand the number of independent contractors performing installation and disconnect services in south Florida. (Ex. C to Doc. 46). In

February 2008, Plaintiff met with Bruister and other principals of FutureTech in Dacula, Georgia, to discuss the possibility of performing development and disconnect services for Comcast Cable. (*Id.*). After the meeting, FutureTech decided to pursue business opportunities in south Florida. (*Id.*).

Bruister offered Plaintiff the opportunity to set up FutureTech's operations in south Florida, and a tentative start date was the summer of 2008. (*Id.*). Plaintiff was "asked to work on commission" and would "be paid … based upon obtaining a contract for the company, and the number of installations and disconnects actually performed." (Ex. A to Doc. 46). Bruister contemplated that Plaintiff would be paid between $140,000 to $180,000 per year. (*Id.*). At the time of the wreck in June 2008, Plaintiff and Bruister had not yet determined whether Plaintiff would perform the consulting services as an employee of FutureTech or as an independent contractor through GBC. (Def. SMF at ¶ 17).

Plaintiff testified that he was physically unable to perform the consulting services for FutureTech after the June 11, 2008 accident. (Ex. A to Doc. 46). Bruister testified that, following the June 11th accident, he regularly called Plaintiff "to inquire as to his health and whether he was physically able to pursue the business opportunity described in th[e] affidavit." (Ex. C to Doc. 46). According to Bruister, Plaintiff indicated that he was not physically able to travel

4

and handle the consulting work in south Florida because of the injuries he sustained in the June 11th accident. (*Id.*). When Bruister learned that Plaintiff was undergoing neck surgery on November 14, 2008, his company decided to abandon the south Florida project. (*Id.*).

On November 16, 2010, Plaintiff accepted a job with Time Warner Cable. (Ex. A to Doc. 46). Plaintiff claims that, "for a period of two years between August 16, 2008, when [Plaintiff] learned of his need for surgery, and November 16, 2012, [Plaintiff] suffered lost earnings due to the injuries he sustained on June 11, 2008." (Doc. 46-1 at 6).

## **DISCUSSION**

### I. **Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by[] . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). The moving party has an initial burden of

informing the court of the basis for the motion and showing that there is no genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *see also Arnold v. Litton Loan Servicing*, *LP*, No. 1:08-cv-2623-WSD, 2009 U.S. Dist. LEXIS 119787, at *10 (N.D. Ga. Dec. 23, 2009) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact." (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999)). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. *See Celotex*, 477 U.S. at 322, 324. "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' " *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th

Cir. 1991), *cert. denied*, 506 U.S. 952 (1992*); see also* FED. R. CIV. P. 56(c)(1)(B), (c)(4). The evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan*, 932 F.2d at 1577. Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *Id.* at 249, 255. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255.

A. <u>**Plaintiff's Claim for Lost Wages or Earnings**</u>

Defendants assert that summary judgment should be granted as to Plaintiff's lost wages or earnings claim because Plaintiff has failed to come forward with evidence from which a jury could determine lost wages or earnings with

7

reasonable certainty. (Doc. 48 at 2). In this diversity action, Georgia law governs the issue of damages. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

To accurately consider the issue of lost wages or earnings, the undersigned must first determine the nature of Plaintiff's claim. There was some confusion in the parties' briefs as to whether Plaintiff's claim was one for lost *wages* or lost *earnings*. (*See generally* Docs. 43-1, 46-1, and 48). Plaintiff seeks to recover income he would have received as a consultant under an alleged employment agreement with FutureTech. (*See* Doc. 46-2 at ¶ 3). Plaintiff would not have received wages for the consulting work because he was not an employee of FutureTech; instead, under the agreement, Plaintiff was to be "paid a commission based upon obtaining a contract for [FutureTech], and the number of installations and disconnects actually performed." (Ex. A to Doc. 46). Under these circumstances, the damages Plaintiff "seeks in tort" are better characterized as "lost earnings during the … period he was unable to work." *Dossie v. Sherwood*, 707 S.E.2d 131, 133 n.8 (Ga. Ct. App. 2011) (emphasis omitted); *see also Young v. Ga. Agr. Exposition Auth.*, 733 S.E.2d 529, 532 (Ga. Ct. App. 2012) (stating that the damages plaintiff sought were better characterized as lost earnings because the

plaintiff was not an employee of the business and did not receive wages for his work).

"In Georgia, the loss of one's earnings from the date of injury to the date of trial as a result of a personal injury is a separate and distinct pecuniary damage that is recoverable, so long as the amount can be determined with reasonable certainty." *Dossie*, 707 S.E.2d at 133 (footnote omitted). Moreover, "if it has been sufficiently established that the loss of earnings was caused by the tortious conduct of the defendant, the fact that the exact measure of the earnings lost may be challenging for the jury to calculate does not preclude their recovery." *Id.* at 134. As the Georgia courts have previously explained:

> [t]he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted.

*Young*, 733 S.E.2d at 532-33 (citations and quotations omitted).

Georgia law recognizes "the difficulty faced by an individual … who happen[s] to be laboring not for a fixed and definite salary, but for fees or commissions in establishing a claim for lost earnings." *Id.* at 533 (citation omitted). Hence, the law

9

> provides a more liberal requirement of proof under such circumstances and where by the very nature of things no better evidence is available … the law perforce contents itself with proof of past average earnings, not always perhaps as proof of actual lost profits, *but as illustrating the earning capacity* of the plaintiff, and hence the value of his lost time.

*Id.* (internal quotation omitted) (emphasis in original); *see also French v. Dilleshaw*, 723 S.E.2d 64, 68 (Ga. Ct. App. 2012) ("[O]ur Court has acknowledged that lost earnings in cases [where the plaintiff is paid fees or commissions] can be fixed with reasonable certainty by sufficient proof of past earnings.").

A recent Georgia case illustrates this principle. In *Smith v. Reddick*, No. A12A1178, 2012 WL 5951495 (Ga. Ct. App. Nov. 29, 2012), an independent truck driver paid on commission by a freight-hauling company sued a repair shop for damages caused by faulty repairs to his truck. To prove lost earnings, the plaintiff testified as to his past gross earnings based on "the number of loads he hauled each week and the distance that he drove" and he estimated his monthly net earnings "after accounting for expenses and taxes." *Id.* at *2-3. The plaintiff also submitted an account summary provided by his employer that supported his claim that he had previously made $20,000 during a two month period. *Id.* Although the court stated that this evidence was "admittedly . . . not the strongest evidence that [plaintiff] could have provided to support" his claim, the court held that it was sufficient evidence from which a jury could determine lost earnings. *Id.*

10

In the present case, unlike the plaintiff in *Smith*, Plaintiff has no proof of past earnings under the alleged employment agreement because he never performed any consulting services or received any income from FutureTech. (Def. SMF at ¶ 12). Further, it is undisputed that Plaintiff did not earn a wage, salary, fee, or commission from GBC or any other business venture for two years prior to the injury. *See Southern Bell Tel. & Tel. Co. v. LaRoche*, 325 S.E.2d 908, 910 (Ga. Ct. App. 1985) (holding that lost earnings was not a proper issue for the jury where plaintiff presented no evidence "to establish his average earnings for the months immediately prior to his injury"). Absent proof of commissions actually earned in the past, any estimate as to the commissions Plaintiff would have earned under the alleged employment agreement is entirely speculative. *Cf. Young*, 733 S.E.2d. at 533 (independent contractor receiving fees provided sufficient evidence of lost earnings to present a jury issue where plaintiff testified as to the gross and net income he earned from his cattle embryo business prior to his injury and provided tax returns reflecting income from the business); *French*, 723 SE.2d at 66-67 (affirming award of lost earnings where independent contractor presented weekly earnings statements for the nine weeks preceding his accident).

Plaintiff contends that a jury could calculate lost earnings with reasonable certainty because Plaintiff committed to a specific employment opportunity and

"would have received between $140,000 to $180,000 per year." (Doc. 46-1 at 9). However, as noted above, because Plaintiff has not provided proof of commissions actually earned in the past, any estimate as to what Plaintiff would have earned under the alleged agreement is entirely speculative. In any event, even assuming Plaintiff committed to an employment opportunity with FutureTech, the record demonstrates that few, if any, terms of an agreement were settled prior to Plaintiff's injury. In particular, the parties never decided who would pay the costs and expenses associated with the venture,[1] and they never established whether Plaintiff would perform the consulting services as an employee of FutureTech or as an independent contractor with GBC.[2] *See Groover v. Dickey*, 325 S.E.2d 617,

---

[1] Plaintiff denies Defendants' statement of material fact that "[t]he plaintiff has failed to produce any evidence of what expenses or costs would have been incurred in connection with the consulting work." (Def. SMF at ¶ 16; Doc. 46-2 at ¶ 16). Plaintiff cites to his Interrogatory responses and affidavit to support his denial, but that evidence does not show "what expenses or costs would have been incurred in connection with the consulting work." (*See* Ex. A and C to Doc. 46). Therefore, the undersigned deems Defendants' statement of material fact as admitted. *See* LR 56.1(B)(2)(a)(2), NDGa.

[2] In contrast to cases where an employee of a company is paid a fixed wage, when analyzing an independent contractor's lost earnings claim, Georgia courts look at evidence of costs and expenses paid in order to determine the independent contractor's net earnings. *See Young*, 733 S.E.2d 529 (reversing summary judgment where independent contractor provided tax returns and testified as to his average net earnings); *French*, 723 SE.2d at 69 (affirming jury award of lost earnings where independent contractor provided earning statements detailing his gross and net earnings). Therefore, even assuming a jury could determine that Plaintiff would have been an independent contractor, Plaintiff's claim for lost

620 (Ga. Ct. App. 1984) (holding that claim for lost earnings based on a specific job that plaintiff could not perform was not a proper issue for the jury because there was "no evidence of a contract or commitment by the other party nor … evidence as to expenses, time on the job or costs of materials"). In addition, the very nature of FutureTech's planned business depended on securing business from yet another company, as it hoped to take advantage of another company's apparent plans to expand the number of independent contractors used to install cable services in south Florida. (Ex. C. to Doc. 46). So, for Plaintiff's lost earnings claim to be successful, he would have to prove not only that he would have consummated a deal with FutureTech but also that FutureTech would successfully win a share of a business expansion by another company. The record evidence is not sufficient to allow a jury to draw such a conclusion.

Plaintiff also contends that his lost earnings claim should go to the jury because "the present case is strikingly similar to" *Dossie v. Sherwood*, 707 S.E.2d 131 (Ga. Ct. App. 2011). (Doc. 46-1 at 10). The undersigned views *Dossie* differently. In *Dossie*, a self-employed business owner sued for lost earnings claiming that injuries sustained in a car wreck caused him to lose a delivery

---

wages or earnings would fail because he has not submitted any evidence of the costs or expenses the parties would incur under the agreement, thereby making a determination as to net earnings too speculative.

contract with a carrier company. *Id.* at 132. To support his claim of lost earnings, the plaintiff proffered the testimony of a manager at the company with whom the contract was made who explained that plaintiff was "guaranteed payment of no less than 60 percent of the daily $630 hauling revenue generated by his truck." *Id.* at 134. The manager estimated that plaintiff would earn "$50,000 to $54,000 per year" after expenses were paid, and plaintiff submitted an activity report and earning statements for the three months he had worked as a delivery contractor, that supported those estimations. *Id.* The court concluded that plaintiff presented sufficient evidence from which a jury could calculate lost earnings with reasonable certainty.

The plaintiff in *Dossie* provided much more evidence concerning lost earnings than what is present here. In *Dossie*, the plaintiff had already provided services under the contract and therefore submitted earning statements to support his claim. Also, the plaintiff in *Dossie* submitted documentation of his contractual relationship, including specific evidence of the details of the contract, including expenses and costs, which are critical in allowing the jury to determine the plaintiff's lost earnings after expenses had been paid. Here, Plaintiff has not produced a completed contract or any evidence of a track record of earnings. Instead, he relies on Bruister's testimony that he would have received between

$140,000 to $180,000 under some sort of undetermined employment arrangement. This evidence is insufficient to create a genuine issue of material fact under the foregoing authority.

Accordingly, the undersigned finds no genuine issue of material fact exists to be tried on Plaintiff's claim for lost wages or earnings. Therefore, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment on Plaintiff's Claim for Lost Wages or Earnings (Doc. 43) be **GRANTED**.[3]

## **CONCLUSION**

It is **RECOMMENDED** that Defendant's Motion for Summary Judgment on Plaintiff's Claim for Lost Wages or Earnings (Doc. 43) be **GRANTED**.

**It is so REPORTED and RECOMMENDED** this   14th   day of December  , 2012.

J. CLAY FULLER
United States Magistrate Judge

---

[3] In Defendants' Brief in Support of their Motion for Summary Judgment on the Plaintiff's Claim for Lost Wages or Earnings (Doc. 46-1), Defendants' argue that Plaintiff's lost wages or earnings claim should fail because Plaintiff cannot establish that he was unable to perform consulting services as a result of the June 11, 2008 accident. (*See id.* at 12-16). Because the undersigned concludes that Plaintiff has failed to provide sufficient evidence from which a jury could determine lost wages or earnings with reasonable certainty, the undersigned need not address this argument.