IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JERRY MICHAEL BRUCE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-1472-JEC-JCF |
| CLASSIC CARRIER, INC., and | : | |
| OCCIDENTAL FIRE AND | : | |
| CASUALTY INSURANCE COMPANY | : | |
| OF NORTH CAROLINA, INC. | : | |
| | : | |
| Defendants. | : | |

## NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendants' Motion for Summary Judgment on the Cause of the Plaintiff's Neck Surgery (Doc. 73).  Because Plaintiff has submitted a sufficient combination of expert and non-expert evidence to create a genuine issue of material fact as to causation, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment on the Cause of the Plaintiff's Neck Surgery (Doc. 73) be **DENIED**.

## PROCEDURAL HISTORY

Plaintiff Jerry Bruce ("Plaintiff") alleges he was hurt in a motor vehicle accident involving a tractor-trailer on June 11, 2008.  (*See* Def.'s Notice of Removal, Doc. No. 1, at ¶ 7).  Unfortunately, Plaintiff had been involved in

1

another automobile accident less than two weeks earlier.  (*See* Oct. 31, 2012 Order, Doc. No. 50).  On May 26, 2012, he filed a Complaint (Doc. 38-2) in the State Court of DeKalb County, Georgia alleging that "[a]s a proximate result of Defendants' concurrent negligence, [he] has incurred monetary damages for medical treatment, surgery and other medical expenses in excess of $168,500.00." (*Id.* at ¶ 16).  After removing the case to this Court, Defendants filed an answer to Plaintiff's Complaint (Doc. 2), and discovery proceeded.

On August 6, 2012, Defendants filed their first motion for summary judgment related to the cause of Plaintiff's neck surgery.  (Doc. 44).  Defendants argued in that motion that Plaintiff could not recover the cost of his neck surgery because he had failed to provide expert medical testimony establishing that the "June 11, 2008 accident caused the need for surgery."  (*See* Doc. 44-1 at 2).  On December 18, 2012, District Judge Julie E. Carnes denied Defendants' motion without prejudice until the Court could resolve Defendants' then pending motion to exclude testimony.  (December 18, 2012 Minute Order).  The undersigned denied the motion to exclude testimony on January 24, 2013.  (Doc. 66).

Four months later, Defendants filed their second motion for summary judgment as to the cause of Plaintiff's neck surgery, with a supporting brief and exhibits (Doc. 73), and a statement of undisputed material facts (Doc. 73-8). Plaintiff responded to Defendants' motion by filing a supporting brief and exhibits

(Doc. 47), and a response to Defendants' statement of undisputed material facts (Doc. 47-2).[1]  Defendants then replied.  (Doc. 75).  With briefing now complete, the undersigned turns to the merits of the motion.

## FACTS

The facts, for summary judgment purposes only, are derived from Defendants' statement of material facts (Doc. 73-8) ("Def. SMF"); Plaintiff's response to Defendants' statement of material facts (Doc. 47-2); and uncontroverted record evidence.

The undersigned has reviewed the record, including the parties' filings, to determine whether genuine issues of material fact exist to be tried.  Yet the court need not "scour the record" to make that determination.  *Tomasini v. Mt. Sinai Med. Ctr. of Fla.*, 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004) (internal quotation omitted).  The facts are construed in the light most favorable to Plaintiff as the non-movant.  *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1309 (11th Cir. 2001).

The nature of the issue here makes it necessary to explore Plaintiff's medical history in some detail.  Plaintiff suffers from psoriatic arthritis with spondylitis,

---

[1]  Plaintiff's exhibits and response to Defendants' statement of undisputed material facts were filed in response to Defendants' first motion for summary judgment as to the cause of Plaintiff's neck surgery.  (*See* Doc. 47).  In his response to Defendants' second motion for summary judgment, Plaintiff incorporates his response to the first motion.  (*See* Doc. 74 at 9).

cervical radiculopathy, lumbar radiculopathy, post-cervical fusion syndrome, and post-lumbar laminectomy syndrome.  (Doc. 45-4 at 5, 12; Doc. 45-5 at 3-4).  These conditions can cause, among other things, neck pain that radiates to the shoulders, arms, and hands, and back pain.  (Doc. 45-5 at 4).

In December 1999, Plaintiff began receiving treatment for arthritis in his neck and back from Dr. Glenn Parris, a rheumatologist.  (Def. SMF at ¶ 1).  At his initial consultation with Dr. Parris, Plaintiff complained of intermittent numbness and tingling down his arms and into his hands and stiffness in his neck.  (*See* Doc. 45-4 at 3).  To relieve these symptoms, Plaintiff underwent neck surgery in 2001.  (Def. SMF at ¶ 2).  Dr. Parris continued to treat Plaintiff after the surgery with anti-inflammatory medications, steroids, and "from time to time" with injections to relieve pain.  (Doc. 45-4 at 3-4, 8).

In 2005, Plaintiff began receiving treatment from Dr. Stephanie Smith, a pain management specialist.  (Def. SMF at ¶ 3).  When he first saw Dr. Smith, Plaintiff complained of pain in his neck, tingling in his right shoulder, and pain and weakness in his fingers and lower back.  (Doc. 45-5 at 10).  Dr. Smith initially prescribed Fentanyl for chronic pain and continued Plaintiff on Darvocet for "rescue pain."  (*Id.*).

On January 18, 2006, Plaintiff saw Dr. Smith and complained that pain had increased in his legs, hips, and neck, but he did "not particularly" complain of pain

radiating into his arms.  (Doc. 45-5 at 13).  At that time, Dr. Smith recommended cervical facet injections because of "[Plaintiff's] complaints, the clinical findings, and the radiographic images."  (*Id.* at 13-14).  Plaintiff received facet injections on May 23, 2006 and June 20, 2006.  (*Id.* at 14).  A month after receiving the second injection, Plaintiff reported having numbness "in his entire arm all the way to his fingers."  (*Id.*).

In December 2006, Dr. Smith prescribed physical therapy to "address [Plaintiff's] neck pain."  (*Id.* at 15).  Plaintiff completed physical therapy in June of 2007 and reported that his pain was significantly better.  (*Id.* at 16).  As a result, Dr. Smith changed Plaintiff's pain medication from Dilaudid to Lortab.  (*Id.*).  In July 2007, Dr. Smith changed Plaintiff's medication back to Dilaudid because of an escalation in pain.  (*Id.*).

On November 7, 2007, Plaintiff complained to Dr. Smith of neck pain and increased right shoulder pain.  (*Id.* at 17).  At that time, Dr. Smith prescribed epidural steroid injections, which were administered in December of 2007 and January of 2008.  (*Id.*).  After the first injection, Plaintiff reported improvement in his pain and an increase in his activities of daily living.  (*Id.*).  The second one on January 24th "further improved his pain after 24 hours."  (*Id.*).

Plaintiff continued to improve, as he next saw Dr. Smith in March 2008, two months before the first automobile accident, when he reported a "70 percent

improvement overall." (*Id.* at 18). He did have some increase in his pain after moving boxes, but otherwise, his condition was stable. (*Id.*).

On May 31, 2008, Plaintiff was involved in an automobile accident with Nayan Patel. (Def. SMF at ¶ 6). Plaintiff was waiting at a stop sign in a row of 12 cars when Patel's vehicle struck the back of his car. (*See* Doc. 47-3 at 21-22). The impact "jarred [Plaintiff] forward" causing his head to go "back some" and he immediately noticed symptoms in his neck. (*Id.* at 21, 23). The collision propelled the car forward, but there was no significant damage to the vehicle other than a couple of scratches and a broken bolt on the bumper. (*Id.* at 22-23; Doc. 44-4 at 4). After the collision, Plaintiff put his vehicle in park and a passenger called 911. (Doc. 47-3 at 24). An ambulance arrived shortly thereafter, and emergency personnel placed a collar on Plaintiff's neck and transported him to the hospital. (*Id.* at 24-25). During transport, Plaintiff experienced pain, but he was unable to testify to what extent the accident had exacerbated pre-existing pain. (*See id.* at 25). At the hospital, doctors performed x-rays, gave Plaintiff an injection and prescription for pain medication, and advised him "to go home and not do anything for a few days and see [his] doctor." (*Id.* at 25-26). From May 31, 2008 until June 11, 2008, the date of the second automobile accident, Plaintiff experienced pain in his neck, but, significantly, he did not have any pain down his arms or in his shoulders. (*Id.* at 26-27).

On June 11, 2008, Plaintiff was involved in the collision at issue here.  (Def. SMF at ¶ 9).   Near the junction of Interstate 285 and Interstate 85, (*id.*), Defendants' tractor trailer crashed into a vehicle behind Plaintiff causing that vehicle to smash into the back of Plaintiff's car.  (*Id.* at ¶ 10).  After the collision, Plaintiff experienced pain in his neck and arm.  (Doc. 47-3 at 29-30).  His vehicle was a total loss:  "the back end was completely bashed in and it pushed up" – and caused the car doors to jam, preventing passengers from exiting the vehicle.  (*Id.* at 33).  After prying one of the car doors open with a bar, EMTs removed Plaintiff from the vehicle, placed a collar on his neck, and transported him to the Gwinnett Medical Center.  (*Id.* at 32).  Plaintiff experienced "a lot of pain" on the way to the hospital, particularly in his neck, right arm, and back.  (*Id.* at 32; Doc. 44-4 at 6). Upon arrival, doctors performed x-rays and gave Plaintiff an injection and prescription for pain medication.  (Doc. 44-4 at 6).   He was released from the hospital that day.  (Def. SMF at ¶ 11).

Nine days later, Plaintiff treated with Dr. Smith and reported "neck, right shoulder, midback, and right hip pain."  (Doc. 45-5 at 22).  Consequently,  Dr. Smith increased both the quantity and strength of Plaintiff's pain medications. (*Id.*).  The following month, Plaintiff saw Dr. Parris and complained of pain down the "right side and numbness … in the hand."  (Doc. 45-4 at 16-17).

In August 2008, Plaintiff was referred to Dr. Keem, a spine surgeon, "for evaluation and treatment of intractable back pain they could no longer handle." (Doc. 45-3 at 10). At his initial visit with Dr. Keem, Plaintiff complained of "neck pain and arm pain involving the right upper extremities" and "paraesthesia, [a] strange sensation involving the right upper extremity." (*Id.* at 9). Dr. Keem understood Plaintiff's symptoms of neck pain and arm pain as being "exacerbated" by the two automobile accidents, and he referred Plaintiff to physical therapy "of the cervical spine." (*Id.* at 10-11).

On November 14, 2008, Dr. Keem performed surgery on Plaintiff's neck. (Def. SMF at ¶ 12). Dr. Keem testified that he performed the surgery because of Plaintiff's subjective symptoms, not because of radiographic findings. (Doc. 45-3 at 25). Having received the surgery, although Plaintiff continues to have pain around his neck and down through his shoulder blades, he no longer has pain and numbness down his right side. (Doc. 47-3 at 35).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by[] . . . citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *see also Arnold v. Litton Loan Servicing*, *LP*, No. 1:08-cv-2623-WSD, 2009 U.S. Dist. LEXIS 119787, at *10 (N.D. Ga. Dec. 23, 2009) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact." (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999)). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. *See Celotex*, 477 U.S. at 322, 324. "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' " *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

9

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991), *cert. denied*, 506 U.S. 952 (1992*); see also* Fed. R. Civ. P. 56(c)(1)(B), (c)(4). The evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan*, 932 F.2d at 1577. Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *Id.* at 249, 255. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255.

**II.    Defendants' Motion for Summary Judgment On the Cause Of The Plaintiff's Neck Surgery**

Defendants argue that: (1) the Plaintiff must come forward with expert medical testimony to survive summary judgment because the instant case presents a medical question relating to causation; and (2) summary judgment is appropriate because Plaintiff has not provided expert medical testimony that demonstrates that the June 11, 2008 automobile accident caused the injuries that necessitated the November 2008 neck surgery.  (*See* Doc. 73-1 at 2, 11).

**A.  Must Plaintiff Provide Expert Evidence On Causation?**

The first dispute concerns whether Plaintiff must submit expert evidence on causation to survive summary judgment.  The necessary elements of a negligence claim "are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages."  *Ceasar v. Wells Fargo Bank, N.A.*, 744 S.E.2d 369, 373 (Ga. Ct. App. 2013).  As a general rule, there is "no requirement that expert testimony must be produced by a plaintiff to a negligence action in order to prevail at trial."  *Nixon v. Pierce County School Dist.*, No. A13A0403, 2013 WL 3388867, at *2 (Ga. Ct. App. July 9, 2013).  Only where medical questions relating to causation are involved must a plaintiff come "forward with expert evidence in order to survive a defense motion for summary judgment."  *Id.*  "Medical questions are presented when 'the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be

11

determined from common knowledge and experience.' " *Id.* (quoting *Cowart v. Widener*, 287 Ga. 622, 627(2)(b), 697 S.E.2d 779 (Ga. 2010)).

Here, the parties' arguments do not provide a clear legal basis for concluding, one way or the other, whether this case presents a medical question relating to causation.  On one hand, Plaintiff contends the short time between the June 2008 accident and the onset of pain in his right arm means expert evidence is not needed to survive summary judgment.  (Doc. 47-1 at 13).  In making this argument, he relies heavily on *Jordan v. Smoot*, 191 Ga. App. 74, 380 S.E.2d 714 (Ga. Ct. App. 1989).  In *Jordan*, the plaintiff sued the defendant for negligence, claiming injuries she sustained in an automobile accident caused her to seek chiropractic treatment.  *Jordan*, 191 Ga. App. at 75.  To support her claim, the plaintiff testified to the following:

> that she was involved in a collision with appellee; that later that same day she experienced pain and visited a chiropractor; that she continued to have pain from the back of her head through her neck and shoulders; that the chiropractic treatments gave her relief; that she stopped seeing the chiropractor four months after the collision; and that she had suffered from some backaches prior to the collision but had not been under medical care.

*Id*.  Based on the plaintiff's testimony, the court concluded that because there was "no significant lapse of time between the injury sustained and the onset of the physical condition for which the [the plaintiff sought] compensation, and the injury sustained [was] a matter which jurors must be credited with knowing by reason of

12

common knowledge," expert medical testimony was not required to withstand a motion for directed verdict.  *Id.*

At first, the instant case appears rather similar to *Jordan*.  Plaintiff did not have right arm pain before the June 2008 accident, he began to experience right arm pain only after the June 2008 accident, and Dr. Keem performed surgery that relieved the right arm pain.  (Doc. 47-3 at 26-27, 32, 35).  Yet what makes the present case more complicated than *Jordan* is that, contrary to Plaintiff's assertions, Dr. Keem never testified that he operated on Plaintiff *only* because of the symptoms in his right arm.  Nor did Dr. Keem opine whether he would have performed the surgery if Plaintiff had complained exclusively of arm pain. Instead, Dr. Keem stated that he operated on Plaintiff "because of his symptoms" which, at that time, included both "neck pain and arm pain involving the right upper extremities."  (Doc. 45-3 at 9, 25).  As noted above, Plaintiff has an extensive history of treatment for neck pain resulting from a variety of spinal conditions.  Complicating matters further, Plaintiff testified that he experienced an exacerbation of *neck* symptoms after the May 2008 collision that persisted up until the June 2008 collision.  (*See* Doc. 47-3 at 26-27).  Thus, unlike the *Jordan* case, where all the plaintiff's symptoms occurred only after the automobile collision at issue, the question of proximate cause is more complex here, considering

Plaintiff's history of chronic neck pain and the exacerbation of his neck symptoms after the May 2008 accident.

Defendants seize upon these distinctions and argue that expert evidence must be presented to determine if the June 11, 2008 accident proximately caused the injuries that necessitated the November 2008 neck surgery.  (Doc. 73-1 at 10).  In doing so, they rely on a recent Order from District Judge Shoob in *Whitley v. Yarber, et al.*, 1:11-cv-00333-MHS (N.D. Ga. Apr. 25, 2013).  In *Whitley*, the plaintiff sued for medical expenses claiming that injuries sustained in a 2010 automobile accident – back, hip, and leg pain – "proximately caused [her] to undergo back surgeries."  (*See* Doc. 54 in 1:11-cv-00333-MHS at 5).  Before the 2010 collision, the plaintiff had a previous automobile accident that caused pain in her back, hips, and legs.  (*Id.* at 2).  Critically, at the time of the 2010 accident, the plaintiff "was still having pain in her back, hips, and legs."  (*Id.* at 4).  The defendants argued that expert testimony was required at the summary judgment stage because the plaintiff was not completely free from pain before the 2010 collision.  (*Id.* at 5-6).  District Judge Shoob agreed with the defendants and concluded that medical expert testimony was necessary "because [the plaintiff] had pre-existing hip, leg, and back pain prior to the 2010 collision."  (*Id.* at 7).

Although *Whitley* offers support for Defendants' position, the undersigned finds it distinguishable.  It is true that, like the plaintiff in *Whitley*, who had pre-

14

existing symptoms prior to the collision at issue, Plaintiff had pre-existing neck symptoms prior to the June 2008 collision. Nevertheless, the problem for Defendants is that Judge Schoob concluded that expert medical testimony was particularly important in *Whitley* because the plaintiff there suffered *all of the same pains* after the 2010 collision that she experienced before the collision. (*See* Doc. 54 in 1:11-cv-00333-MHS at 7). Indeed, the very day before the 2010 accident, the plaintiff in *Whitley* had "back and radiating hip and leg pain" at an "8 on the 1-10 pain scale." (*See* Doc. 43-1 in 1:11-cv-00333-MHS at 5). Here, on the other hand, Plaintiff testified that he was *pain-free in his right arm* before the June 2008 accident and that he only began to experience pain in his right arm *after* the second collision. (*See* Doc. 47-3 at 26-27, 32). And while Defendants note that Plaintiff had right arm pain in the past, that fact is not determinative under Georgia law, as the arm pain was not present just prior to the June 2008 accident. *See Cox v. Rewis*, 207 Ga. App. 832, 835, 429 S.E.2d 314 (Ga. Ct. App. 1993) (concluding that a plaintiff could recover for carpal tunnel injuries exacerbated by an automobile collision, "[g]iven the fact that [the plaintiff's] problems with her right hand ceased after her surgery in January of 1989 and did not recur until soon after the collision the following September", and noting that the "jury did not need expert evidence to find that although the automobile accident did not cause the carpal tunnel problems, it aggravated them").

15

Where Plaintiff had pre-existing neck pain and right arm pain that recurred only after the June 2008 collision, this matter does not fit neatly into the relevant line of prior Georgia cases. *Cf. Hutcheson v. Daniels*, 224 Ga. App. 560, 569, 481 S.E.2d 567 (Ga. Ct. App. 1997) (concluding that expert medical testimony on the plaintiff's hernia condition was not necessary to survive a directed verdict because the plaintiff's problems with his hernia "ceased after [his] surgery in [1985] and did not recur until soon after the collision [in 1991]"); *Madden v. Solomon*, 196 Ga. App. 512, 396 S.E.2d 245 (Ga. Ct. App. 1990) (holding that expert medical testimony was not necessary to survive a motion for directed verdict because the plaintiff immediately felt pain in her neck and back after an automobile collision and testified that "prior to the collision she had not had any problems with her neck or back").

Yet, under these facts, reaching a conclusion as to whether Georgia law demands expert medical testimony to be presented at this stage of the litigation is not necessary.  As is discussed more fully below, even assuming this case presents a "medical question" related to causation, thereby requiring some expert medical testimony, Plaintiff has presented a sufficient combination of expert and non-expert evidence to create a genuine issue of material fact on causation.

16

### B.     Has Plaintiff Provided Sufficient Evidence to Survive Summary Judgment?

Plaintiff claims that summary judgment is inappropriate here because the submission of Plaintiff's testimony and the expert evidence on causation has created a genuine issue of material fact on the issue of causation.  (Doc. 47-1 at 7).  Where expert testimony on causation is required, the testimony generally "must show as an evidentiary threshold that the expert's opinion regarding the causation is based ... on the determination that there was a reasonable probability that the negligence caused the injury."  *Nixon*, 2013 WL 3388867, at *3 (quoting *Zwiren v. Thompson*, 276 Ga. 498, 501, 578 S.E.2d 862 (Ga. 2003)).  Expert testimony "as to the *possibility* of a causal relation between a given accident or injury and the subsequent ... impaired physical or mental condition of the person injured is not sufficient, *standing alone*."   *Nat'l Dairy Prods. Corp. v. Durham*, 115 Ga. App. 420, 423, 154 S.E.2d 752 (Ga. Ct. App. 1967) (emphasis added).  Yet a causal relation can be established so as to create a jury question when "expert testimony regarding the possibility of a causal link between negligence and injury" is "combined with other non-expert evidence indicating that a relationship exists …." *Nixon*, 2013 WL 3388867, at *3.  "Thus, medical expert testimony as to causation that shows only a reasonable possibility as opposed to a probability 'may be aided by other medical or non-medical evidence that, in totality, shows causation, even though the medical opinion is weak....' "  *Id.* (quoting *Rodrigues v. Ga.–Pacific*

17

*Corp.*, 290 Ga. App. 442, 446, 661 S.E.2d 141 (Ga. Ct. App. 2008)).  In a nutshell, to create a genuine issue of material fact on the issue of causation, a plaintiff who supplies medical testimony of a possibility that negligence caused the injury needs something more in the way of non-expert evidence.

Here, the undersigned concludes that Plaintiff has submitted a sufficient combination of expert and non-expert evidence that, in totality, creates a genuine issue of material fact on causation.  As for expert testimony, Dr. Keem testified that he performed the 2008 neck surgery because of Plaintiff's symptoms and that he understood Plaintiff's symptoms of neck and arm pain "as being exacerbated" by the two automobile accidents.  (Doc. 45-3 at 11).  He concluded that "based on [his] common sense, based on [his] knowledge dating back to college, and based on [his] experience as a physician and clinician, [and] as a spine surgeon … that the accident that involves [a] truck wreck would do more damage than [a] passenger vehicle."  (*Id.* at 25); (*see also id.* at 19 ("If I were given a choice between a truck and a car, excluding all other possibilities, just purely impact between a truck and a car accident, my expert opinion is it is likely that truck [sic] has caused more harm than passenger [sic] vehicle.")).[2]  Additionally, Dr. Parris

---

[2]  Defendants argue that Plaintiff is prohibited from using Dr. Keem's affidavit to establish a genuine issue of material fact on causation because Dr. Keem has not been disclosed as an expert under Fed. R. Civ. P. 26(a)(2)(B) and, therefore, may not testify as to hypothetical scenarios.  (Doc. 73-1 at 14).  The undersigned agrees.  (*See* Doc. 66 at 8 ("[Plaintiff's] medical providers are free to offer

testified that Plaintiff "had more complaints of neck pain and numbness after a motor vehicle accident." (Doc. 45-4 at 5). When asked if he had an opinion on whether the second accident "caused the need for surgery", Dr. Parris responded by saying that he did believe that "it cause[d] the need for surgery" given Plaintiff's "history of chronic neck pain … and the subsequent increase in symptoms after the injury." (Doc. 45-4 at 5, 8).

Plaintiff offers non-expert evidence that is in harmony with the testimony of his treating physicians. He testified that he did not suffer from any symptoms in his right arm prior to the June 2008 collision, but that he immediately felt those symptoms after the accident. (*See* Doc. 47-3 at 26-27, 32). Connecting these symptoms with the November 2008 surgery, Dr. Keem testified that he operated because of the symptoms Plaintiff presented to him, which included right arm pain. (*See* Doc. 45-3 at 9, 25). This non-expert evidence, when considered along with the expert testimony cited above, is sufficient to create a genuine issue of material fact on causation. *See Rodrigues*, 290 Ga. App. at 445-446 (reversing summary judgment because the plaintiff provided expert testimony that chlorine exposure

---

opinions as to cause of the condition requiring the neck surgery … so long as any opinions are based on facts learned in the course of treating Plaintiff and so long as no hypotheticals are posed to the treating physicians."). Nonetheless, all of the expert testimony from Dr. Keem cited in this Report and Recommendation comes from his deposition testimony, which was provided in his capacity as Plaintiff's treating physician. And, certainly, Dr. Keem can testify about the symptoms Plaintiff presented to him and draw a conclusion as to which automobile accident more likely produced the symptoms. (*See id.*).

was a possible cause of his pneumonia, and he supplemented that evidence with his own testimony as to his apparent good health prior to exposure and rapid onset of symptoms following exposure); *Nat'l Dairy*, 115 Ga. App. at 423-424 (finding of proximate cause by jury was authorized where expert's opinion that collision may have placed pressure on decedent's pelvic organs and caused dormant cancerous tumors to activate and spread was considered in connection with decedent's prior good health and subsequent decline in health).

Defendants claim that summary judgment is warranted "[b]ecause the plaintiff's own doctors do not know if the June 11, 2008 accident caused the need for surgery." (Doc. 73-1 at 3). While Plaintiff's treating physicians did not definitively state that the June 11, 2008 accident caused Plaintiff's injuries, at this stage of the litigation, it is not Plaintiff's burden to *prove* causation. Rather, Plaintiff need only provide expert testimony regarding the possibility of a causal link and non-expert evidence indicating that a relationship exists. Given the expert testimony that the accident involving the tractor trailer that totaled Plaintiff's car most likely caused more harm to him than the fender-bender two weeks earlier, and Plaintiff's testimony of new right arm pain following the second collision, the undersigned finds that this matter should not be resolved at summary judgment because the evidence showing a lack of causation is not plain, palpable, and undisputed. *See Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 158, 658 S.E.2d 909

(Ga. Ct. App. 2008) ("Questions of negligence generally are for the jury, and may be resolved on summary judgment 'only where the evidence is plain, palpable and undisputable.' ") (quoting *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 864(2), 596 S.E.2d 604 (Ga. 2004)).

Accordingly, because Plaintiff has submitted a sufficient combination of expert and non-expert evidence to create a genuine issue of material fact as to causation, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment on the Cause of the Plaintiff's Neck Surgery (Doc. 73) be **DENIED**.[3]

## <u>CONCLUSION</u>

It is **RECOMMENDED** that Defendants' Motion for Summary Judgment on the Cause of the Plaintiff's Neck Surgery (Doc. 73) be **DENIED**.  The Clerk is **DIRECTED** to terminate the reference to the undersigned.

---

[3] Plaintiff filed a Motion to Strike and Response to Defendants' Second Motion For Summary Judgment on the Cause of Plaintiff's Neck Surgery (Doc. 74) in which he argues that the Defendants' motion for summary judgment should be stricken from the record as untimely or, alternatively, be denied on the merits.  As noted above, the Court denied without prejudice Defendants' first motion for summary judgment on the cause of Plaintiff's neck surgery until Defendants then pending motion to exclude could be resolved.  (December 18, 2012 Minute Order). In denying the motion, the Court did not adopt a set deadline for re-filing the motion.  (*See id.*).  Because no deadline was set, the undersigned finds Defendants' second motion for summary judgment timely.

**It is so REPORTED and RECOMMENDED** this <u>19th</u> day of <u>August</u>, 2013.

        <u>/s/ *J. CLAY FULLER*</u>
        J. CLAY FULLER
        United States Magistrate Judge