IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JERRY MICHAEL BRUCE,

       Plaintiff,

v.

CLASSIC CARRIER, INC., and
OCCIDENTAL FIRE AND CASUALTY
INSURANCE COMPANY OF NORTH
CAROLINA,

       Defendants.

CIVIL ACTION NO.

1:11-cv-01472-JEC

## ORDER & OPINION

This case is before the Court on Defendants' Motion for Summary Judgment on the Cause of Plaintiff's Neck Surgery [73], the Magistrate's Report and Recommendation [76], and Defendants' Objections to the Magistrate's Report and Recommendation [78]. This case is also before the Court on Plaintiff's Motion to Exclude Testimony of David G. Brown and Randy F. Rizor [81]. For the reasons explained in what follows, the Court **ACCEPTS** the Magistrate's Report and Recommendation [76] and **DENIES** Defendants' Motion for Summary Judgment on the Cause of Plaintiff's Neck Surgery [73]. The Court also **DENIES** Plaintiff's Motion to Exclude Testimony of David G. Brown and Randy F. Rizor [81].

**BACKGROUND**

I.   **FACTUAL BACKGROUND**

This case arises out of injuries Jerry Michael Bruce ("plaintiff") alleges to have suffered as a result of a June 11, 2008 automobile accident caused by one of the trucks owned and operated by Classic Carrier, Inc. and insured by Occidental Fire and Casualty Insurance Company of North Carolina (together, "defendants"). The facts relevant to matters before the Court, however, date to long before the accident.

Plaintiff has an extensive history of spine-related ailments, including psoriatic arthritis with spondylitis, radiculopathy of the cervical and lumbar vertebrae, post-cervical fusion syndrome, and post-lumbar laminectomy syndrome. (Parris Dep. [45-4] at 5, 12; Smith Dep. [45-5] at 3-4.) Symptoms of these conditions include pain in the back, neck, shoulders, arms, and hands. (Smith Dep. [45-5] at 4.)

Dr. Glenn Parris ("Parris"), a rheumatologist, began treating plaintiff in December 1999 for back and neck arthritis. (Defs.'Statement of Material Facts [73-8] at ¶ 1.) Plaintiff underwent neck surgery in 2001 to treat intermittent numbness and tingling down his arms and hands and stiffness in his neck. (Parris Dep. [45-4] at 3; Defs.' Statement of Material Facts [73-8] at ¶ 2.) Afterwards, Parris continued to treat plaintiff with steroidal and

2

non-steroidal anti-inflammatory drugs, including occasional injections. (Parris Dep. [45-4] at 3-4, 8.)

Dr. Stephanie Smith ("Smith"), a pain management specialist, began treating plaintiff in 2005. (Defs.' Statement of Material Facts [73-8] at ¶ 3.) Plaintiff came to Smith complaining of neck pain, tingling in his right shoulder, and pain and weakness in his fingers and lower back. (Smith Dep. [45-5] at 10.) Smith initially prescribed Fentanyl for plaintiff's chronic pain and Darvocet for "rescue pain." (*Id.* at 5.) When plaintiff complained to Smith on January 18, 2006 of increasing pain in his legs, hips, and neck, Smith recommended cervical facet injections, which were performed on May 23 and June 20, 2006. (*Id.* at 13-14.) After the second injection, plaintiff reported numbness in his arm and fingers. (*Id.* at 14.) In December 2006, Smith prescribed physical therapy for plaintiff's neck pain. (*Id.* at 15.) Physical therapy apparently improved plaintiff's condition, as he reported significantly less pain upon the completion of therapy in June 2007. (Smith Dep. [45-5] at 16.) This prompted Smith to change plaintiff's medication from Dilaudid (which had replaced Fentanyl) to Lortab, which was then changed back to Dilaudid in July 2007 as plaintiff's pain once again escalated. (*Id.*) In November 2007, plaintiff complained to Smith of neck pain and increased right shoulder pain, for which Smith administered epidural steroid injections in December 2007 and January

3

2008.  (*Id.* at 17.)   Both brought about some improvement in plaintiff's pain.  (*Id.*)  By March 2008, plaintiff could report to Smith a "70 percent improvement overall" in his condition.  (*Id.* at 18.)

On May 31, 2008, plaintiff was involved in an automobile accident.  (Defs.' Statement of Material Facts [73-8] at ¶ 6.)  While waiting in a line of twelve cars at a stop sign, plaintiff's car was struck from behind by a vehicle driven by Nayan Patel ("Patel"). (Parris Dep. [47-3] at 21-22.)  Plaintiff immediately felt pain in his neck.  (*Id.* at 21, 23.)  A passenger in plaintiff's vehicle called for emergency personnel, who stabilized plaintiff's neck and transported him by ambulance to a hospital.  (*Id.* at 24-25.)  During transport, plaintiff was unable to report how much of the pain he was experiencing predated the collision.  (*Id.* at 25.)  At the hospital, doctors x-rayed plaintiff, injected him with pain medication, and advised him to rest for a few days and see his regular physician. (*Id.* at 25-26.)  In the time between the collision and June 11, 2008, plaintiff reported experiencing neck pain, but no arm or shoulder pains.  (Parris Dep. [47-3] at 26-27.)

On June 11, 2008, plaintiff was again involved in an automobile collision, when a tractor-trailer rear-ended a vehicle, which in turn struck the rear of plaintiff's car.  (Defs.' Statement of Material Facts [73-8] at ¶¶ 9-10.)  Immediately afterwards, plaintiff reported

4

neck and arm pains. (Parris Dep. [47-3] at 29-30.) Plaintiff had to be removed from the vehicle by emergency personnel, as the collision had jammed the doors. (*Id.* at 33.) Plaintiff was again collared and transported to a hospital, reporting intense pain in his neck, right arm, and back while in transit. (*Id.* at 32; Bruce Dep. [44-4] at 6.) At the hospital, doctors x-rayed plaintiff, administered a pain-reliever injection, and prescribed further pain medication. (*Id.*) Plaintiff was discharged from the hospital that day. (Defs.' Statement of Material Facts [73-8] at ¶ 11.)

Meeting with Smith nine days later, plaintiff complained of pain in his "neck, right shoulder, midback, and right hip," and Smith increased the quantity and strength of plaintiff's medications. (Smith Dep. [45-5] at 22.) In July 2008, plaintiff complained to Parris of pain on his right side and numbness in his right hand. (Parris Dep. [45-4] at 16-17.)

Parris referred plaintiff to Dr. Sean K. Keem ("Dr. Keem"), a spinal surgeon, "for evaluation and treatment of intractable back pain." (Dr. Keem Dep. [45-3] at 10.) Plaintiff complained to Dr. Keem of "neck pain and arm pain and weakness involving the right upper extremities" and "paraesthesia, [a] strange sensation involving the right upper extremities." (*Id.* at 9.) Dr. Keem understood the symptoms plaintiff reported as having been "exacerbated" by the two collisions, and prescribed physical therapy. (*Id.* at 10-11.)

5

Eventually, based on plaintiff's subjective reports of his symptoms, rather than any radiographic findings, Dr. Keem determined that surgery on plaintiff's neck was appropriate. (*Id.* at 25.) Dr. Keem performed the surgery on November 14, 2008. (Defs.' Statement of Material Facts [73-8] at ¶ 12.) Since the surgery, plaintiff has continued to report neck and shoulder pain, although the pain and numbness on his right side have disappeared. (Parris Dep. [47-3] at 35.)

Plaintiff began seeing Dr. John P. Schulze ("Dr. Schulze"), a doctor practicing in Corpus Christi, Texas, on February 8, 2011, and continued seeing him through at least March 15, 2013. (Dr. Schulze Dep. [82-1] at 2.) Dr. Schulze treated plaintiff for a variety of health conditions, including bronchitis, sinus problems, and chest and neck pain. (*Id.* at 4.) As part of his treatment of plaintiff's neck pain, Dr. Schulze injected him with Demerol and prescribed Lortab. (*Id.* at 5; Bruce Dep. [82-2] at 2-3.)

## II.  PROCEDURAL BACKGROUND

On May 26, 2010, plaintiff filed suit against the defendants in the State Court of DeKalb County, Georgia. *See Bruce v. Nat'l Gen. Ins. Co., et al.*, Case No. 1:10-cv-01988-HLM (N.D. Ga.) at [1]. At that time, Nayan Patel, the driver of the vehicle in the first accident, was named as a defendant, as was Quinton Eugene Barger, the driver of the tractor-trailer involved in the second accident.

6

Defendants removed the case to this Court on June 28, 2010, alleging diversity of citizenship. *Id.* Plaintiff moved to remand [4] on the ground that complete diversity was lacking, given the fact that both the plaintiff and defendant Patel were citizens of Georgia. Notwithstanding defendants' argument that Patel had been fraudulently joined [6], the district court granted the motion to remand on August 20, 2010. (*See* Order [14].)

With the case now back in DeKalb County State Court, defendant Patel moved to sever his case, on the ground that he was not a joint tortfeasor with the other defendants. (*Bruce v. Classic Carrier, Inc., et al.*, Case No. 1:11-cv-01472-JEC (N.D. Ga.) at [1].) The State Court granted Patel's motion on April 11, 2011. (*Id.* at Order to Sever [1-2] at 1.) Defendants once again filed a notice of removal under 28 U.S.C. § 1446(b) on May 5, 2011. (Notice of Removal [1].) At that point, jurisdiction in this Court became proper, as there was complete diversity of parties: defendant Occidental is a North Carolina corporation; defendant Classic Carriers is a Tennessee corporation; defendant Barger was a Tennessee citizen; and plaintiff is a Georgia citizen. (*Id.* at ¶¶ 8-11.) The amount in controversy exceeds $75,000.00. (*Id.* at ¶ 12.)

The parties filed a joint motion for discovery on September 19, 2011. (Joint Mot. for Disc. [8].) The parties agreed to a four-month discovery track. (*Id.* at ¶ 10.) Initial disclosures were to

7

be provided by October 15, 2011.  (*Id.* at ¶ 8.)  Discovery was scheduled to close on January 17, 2012. (Scheduling Order [9] at 1.) Shortly after the filing of plaintiff's initial disclosures, plaintiff filed for Chapter 13 bankruptcy, which imposed an automatic stay on this case.  (Notice of Pl.'s Bankr. Pet. [12].)  The bankruptcy case was closed on December 23, 2012, but because it disrupted the parties' ability to conduct discovery, they jointly requested an extension of discovery through April 16, 2012. (Joint Mot. to Extend Disc. [13] at ¶¶ 6-7, 9.)  The Court issued an amended scheduling order on January 27, 2012, granting the parties' request. (Am. Scheduling Order [14] at 1.)  The Court eventually permitted discovery to be further extended to December 21, 2012.  (Order [50] at 12.)

On June 28, 2012, defendants filed a motion for sanctions against plaintiff, based on plaintiff's alleged willful concealment of a May 2011 affidavit about plaintiff's medical condition made by Dr. Keem, who had performed surgery on plaintiff's neck. (Defs.' Mot. for Sanctions [38].)  There had been no mention of that affidavit in plaintiff's disclosure of Dr. Keem on April 19, 2012, and defendants only learned of the affidavit while deposing the doctor on June 19, 2012.  (Defs.' Br. in Support of Sanctions [38-1] at 6.)  The Court concluded that plaintiff's disclosure of Dr. Keem did not meet the requirements of Rule 26(a)(2)(B), but declined to impose sanctions,

finding the noncompliance to be harmless.  (Order [50] at 12.)

Barger died at some point during, or just after, discovery.  A Suggestion of Death [62] was filed on January 16, 2013, but it is not clear from the record when exactly Barger died.  On May 17, 2013, defendants filed a motion for summary judgment arguing that plaintiff had failed to show that the second accident was the cause of the plaintiff's alleged injuries and damages.  (Defs.' Mot. for Summ. J. [73].)  On August 19, 2013, Magistrate Judge Fuller issued a Report and Recommendation ("R&R") [76] in favor of denying defendants' motion for summary judgment.  Defendants submitted objections [78] to Judge Fuller's Report.

On September 23, 2013, defendants disclosed David G. Brown ("Brown"), an engineer, and Dr. Randy F. Rizor ("Rizor"), a medical doctor, as expert witnesses.  (Brown Disc. [79] and Rizor Disc. [80].)  On November 7, 2013, plaintiff filed a motion to exclude the testimony of Brown and Rizor, on the grounds that the disclosures were untimely and violated Rule 26 and Local Rule 26.2(C).  (Pl.'s Mot. to Exclude [81].)  Both defendants and plaintiff have further briefed this matter.  (Defs.' Br. in Opp'n [82], Pl.'s Reply [84].)

AO 72A
(Rev.8/82)

## DISCUSSION

I.   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

   A.   **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "'no genuine issue as

10

to any material fact,'" as "a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non[-]moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

**B.    Is Expert Testimony Necessary?**

Judge Fuller's R&R concludes that medical expert testimony is not necessary in this case for plaintiff to survive the present

11

summary judgment motion, but that even if it were, plaintiff has provided a sufficient combination of expert and non-expert testimony to establish a triable issue as to causation. (R&R [76] at 12, 16.) Defendants object to this conclusion, and contend that Georgia law requires plaintiff to produce expert medical testimony in this case in order to survive defendants' motion for summary judgment. (Defs.' Objs. [78] at 1-3.) Further, defendants argue that plaintiff has not produced sufficient expert testimony to meet that standard, because there is no explicit testimony from plaintiff's doctors linking plaintiff's surgery to his newly-identified arm pain. (*Id.* at 4.) Dr. Keem, plaintiff's surgeon, stated that he decided that surgery was necessary based on plaintiff's subjective reports of symptoms, rather than radiographic evidence. (Dr. Keem Dep. [45-3] at 9, 25.) Thus, defendants contend, if a medical expert is unable to state definitively, based on the objective medical evidence, that the tractor-trailer collision caused damage to plaintiff's neck requiring surgery, neither could a reasonable jury. (Defs.' Objs. [78] at 7-8.)

The elements of a negligence claim in Georgia "are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533 (2013). As Judge Fuller correctly noted, expert testimony is not generally required in

12

a negligence claim, except where there is a medical question about the cause of the plaintiff's injury.  (R&R [76] at 11.)  A medical question arises where "the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be determined from common knowledge and experience and instead requires the assistance of experts with specialized medical knowledge." *Cowart v. Widener*, 287 Ga. 622, 627 (2010).  As the *Cowart* court recognized, the term "medical question" is too broad, as "most 'medical questions' relating to causation are perfectly capable of resolution by ordinary people using their common knowledge and experience, without the need for expert testimony." *Id.* at 628.  The Georgia Supreme Court thus proffered the term "specialized medical questions" to refer to those medical issues that require expertise beyond the lay juror's capacity. *Id.* at 629.

Whether a specialized medical question exists here turns on the plaintiff's theory of the injury alleged.  In a leading Georgia Supreme Court case, a hospital patient suffering from acute leukemia slipped on a wet floor, hit his head, and died a few hours later from a cerebral hemorrhage. *Self v. Exec. Comm. of the Ga. Baptist Convention of Ga., Inc.*, 245 Ga. 548 (1980).  When his family sued the hospital for negligence, the hospital provided expert testimony that purported to demonstrate that the cause of the patient's death was brain damage caused by the acute leukemia, not any trauma from

13

the fall.  The family provided no contrary expert evidence, and the trial court granted summary judgment to the hospital.  The Georgia Court of Appeals affirmed, but the Georgia Supreme Court reversed, holding that the expert testimony was not dispositive.  Rather, "[t]he weight given to expert testimony in such cases is for the trier of fact, who is not required to give it controlling influence." *Id.*  In *Cowart*, the Georgia Supreme Court interpreted *Self* to hold that:

> [a] lay jury may reasonably infer a causal link between a sharp blow to the head of a patient whose condition appeared to be improving and his death from bleeding in his head a few hours later.  A defense expert may create a material issue as to whether the blow was the actual cause of death, but in that event, the jury resolves the disputed fact; it does not require summary judgment for the defendant.

*Cowart*, 287 Ga. at 637; *see also Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 160 (2008)("*Self* concerned whether a blow to the head could cause death, a question that we have held to be within a lay person's knowledge.")  Thus, even where the defendant has provided an alternative theory of the cause of plaintiff's injury, supported by evidence and medical expert testimony, this does not shift the burden to the plaintiff in a summary judgment motion.  Rather, it simply raises a factual dispute to be resolved at trial.  The specialized medical question analysis remains focused on the plaintiff's theory.

A complication emerges, however, where the plaintiff has

14

preexisting medical ailments.   The Georgia Court of Appeals has addressed situations where the plaintiff is seeking to recover for an injury that is related to a preexisting medical condition, and has held, as a general principle, that "[a] causal connection, requiring expert medical testimony, must be established where the 'potential continuance of a disease' is at issue." *Jordan v. Smoot*, 191 Ga. App. 74 (1989)(citing *Eberhart v. Morris Brown Coll.*, 181 Ga. App. 516, 518 (1987)).   This preexisting condition rule only applies, however, where there is continuity in the condition; it does not apply in situations where the preexisting condition has subsided prior to the occurrence of the tort. *See Cox v. Rewis*, 207 Ga. App. 832, 835 (1993)(jury could reasonably find that the plaintiff's carpal tunnel problems were aggravated by an automobile accident, even if the plaintiff had first suffered from them years before, because the symptoms had subsided in the intervening period).   Thus, if there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment.   However, a lay jury could find proximate cause if the injury, although present in plaintiff's medical history, had disappeared prior to the tortious event.

The *Cox* holding follows from the general principle that, where the symptoms complained of emerge immediately or soon after the event

15

alleged to have caused them, and it is common knowledge that such an event is one that could cause that kind of injury, a reasonable jury could draw conclusions about proximate cause. *Hutcheson v. Daniels*, 224 Ga. App. 560, 569 (1997)("[A] lay jury could conclude from common knowledge that a causal connection existed in light of the short lapse between [the plaintiff's] accident and his onset of symptoms and receipt of medical treatment."); *Jordan*, 191 Ga. App. at 74 ("[w]here, as here, there is no significant lapse of time between the injury sustained and the onset of the physical condition for which the injured party seeks compensation, and the injury sustained is a matter which jurors must be credited with knowing by reason of common knowledge, expert medical testimony is not required in order for a plaintiff to establish a personal injury case sufficient to withstand a defendant's motion for directed verdict.")

In support of their position that there is a specialized medical question, defendants urge the Court to follow a recent Northern District of Georgia case: *See Whitley v. Yarber*, 1:11-cv-00333-MHS (N.D. Ga. Apr. 25, 2013)(Shoob, J.)(copy attached to Defs.' Reply Br. [75-1]). In *Whitley*, the defendant was granted summary judgment under facts similar to those in the present case. Both cases involve injuries suffered by a plaintiff who was involved in two successive automobile accidents, with a relatively short interval of time between the accidents. Judge Shoob granted summary judgment to the

16

defendant (who caused the second accident) because there had emerged in discovery no evidence or testimony that could support the plaintiff's contention that the injuries were the result of the second accident, rather than the first one. (*Id.* at 7-8.)

This Court, however, agrees with Judge Fuller that *Whitley* is factually distinguishable. In *Whitley*, the plaintiff complained of the exact same pains that she had experienced prior to the second automobile accident that she claimed necessitated her surgery. (*Id.* at 23.) Because of this, Judge Shoob granted summary judgment for the defendant, as there was no ground for a reasonable jury to determine that the automobile accident caused any change in the plaintiff's condition. (*Id.* at 30-31.) This is firmly within the holding of *Jordan*. Here, in contrast, plaintiff claims to have suffered injuries not present immediately before the collision with defendants' tractor-trailer. Specifically, plaintiff identifies arm pain that he did not complain of after the first accident. (Smith Dep. [45-5] at 14-18; Parris Dep. [47-3] at 32; Bruce Dep. [44-4] at 6.) Although plaintiff has suffered from similar arm pain in the past, he had reported its diminishment prior to the accidents of May and June, 2008. This would place the present case within the *Cox* exception to *Jordan*, and thus distinguish it from *Whitley*.

Since the parties submitted their briefs, there has been a new, but unpublished, Eleventh Circuit opinion that provides a closer

17

factual comparison to the present case than does *Whitley*. *See Cooper v. Marten Trans., Ltd.*, 539 Fed. App'x 963 (11th Cir. 2013). In *Cooper*, a husband and wife were involved in an accident when their car was struck by a tractor-trailer. *Id.* at 964. Shortly after the accident, and complaining of back pain, the couple underwent surgeries. *Id.* They both had histories of degenerative back ailments, were obese, and had been involved in another car accident the year before. *Id.* at 966. The district court granted summary judgment to the defendants on the ground that the plaintiffs' doctors could not explain why they believed the injuries were caused by the accident with the defendants, rather than the earlier accident or the pre-existing conditions. *Id.* The Eleventh Circuit reversed, noting that although there was "evidence that the [plaintiffs'] injuries may have been the result of preexisting conditions or [the prior] collision, such evidence created a dispute of material fact that the district court was not authorized to resolve at the summary judgment stage." *Cooper*, 539 Fed. App'x at 968. The Eleventh Circuit noted that "[w]hether [plaintiffs] suffered new or aggravated back problems shortly after a low-speed collision with a tractor trailer is the type of question a lay jury could decide based on common knowledge." *Id.* (citing *Hutcheson*, 224 Ga. App. at 561).

Although *Cooper* is not binding precedent, it is persuasively reasoned. Further, it comports with this Court's reading of the

18

binding precedents of *Cowart*, *Self*, and *Cox*.  On the basis of these cases, the Court concludes that medical expert testimony is not necessary in this case for plaintiff to avoid summary judgment, as plaintiff reported symptoms soon after the tractor-trailer accident--the arm pain--that he had not experienced for years prior to the accident.   Defendants may raise issues relating to plaintiff's medical history and introduce alternative theories about the cause of plaintiff's injuries, but those are matters for the trier of fact to weigh, not for this Court to decide on a motion for summary judgment.

Even assuming, however, that expert medical testimony is necessary at this stage, the Georgia Court of Appeals has held that plaintiffs may meet the required threshold showing to survive summary judgment through a combination of expert testimony and other evidence. *Rodrigues v. Georgia-Pacific Corp.*, 290 Ga. App. 442, 446 (2008)(reversing a grant of summary judgment for a defendant where the plaintiff's medical expert stated only that the defendant's actions were a "'possible' cause of [the plaintiff's] injuries, [because] other nonexpert evidence was presented that supplemented that testimony.")  In *Rodrigues*, that supplementary evidence consisted of the plaintiff's testimony that he had been in good health before the allegedly tortious act and began suffering symptoms immediately afterwards. *Id.*  See also *Nat'l Dairy Prods. Corp. v. Durham*, 115 Ga. App. 420, 423-24 (1967)(where plaintiff claimed that

a collision caused an inactive tumor to become active and malignant, a combination of expert medical testimony that established possible causation and nonexpert testimony that "established the decedent's apparent good health prior to the collision and the onset of cancer symptoms closely following the collision" was sufficient to withstand a summary judgment motion).

Similarly, plaintiff's description of his health prior to the collision, supported by his doctors' accounts of plaintiff's medical history, are sufficient to avoid summary judgment.[1]   Although plaintiff has a long history of ailments, he was reporting significant improvement by March 2008.  (Smith Dep. [45-5] at 18.) After the accident of June 11, 2008, he reported symptoms that were not present in the months preceding that incident.  (Parris Dep. [47-

---

[1]   Dr. Keem states in his affidavit:

> Although I cannot exclude the possibility that the two collisions combined to exacerbate [plaintiff's] preexisting condition and cause his pain, treatment and subsequent surgery, in my opinion, and to a reasonable degree of medical certainty, [plaintiff's] pain, treatment, and subsequent surgery were caused by the June collision involving the tractor-trailer.  When comparing the two collisions and the impact they had upon [plaintiff's] physical condition, it is more probable that [plaintiff's] pain, treatment and surgery were caused by the high energy collision between a tractor trailer, Chevrolet Tahoe, and [plaintiff's] vehicle, which caused significant property damage, as compared to the collision which caused minor damage, and was neither disabled nor inoperable.

(Dr. Keem Aff. [73-6] at ¶ 13.)

20

3] at 32; Bruce Dep. [44-4] at 6.)   This non-expert testimony, coupled with the expert testimony from plaintiff's doctors, falls well within the rule of *Rodrigues*.   Therefore, even with defendants' argument that Dr. Keem only raised the <u>possibility</u> that the surgery was necessitated by the accident, there is sufficient non-expert testimony in this case to warrant a denial of defendants' motion for summary judgment.

Based on these persuasive and binding authorities, the Court determines that summary judgment is not warranted here.   The Court thus agrees with Judge Fuller's Report and Recommendation [76] and **DENIES** defendants' motion for summary judgment [73].

## II.   <u>PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY</u>

### A.   <u>Motion to Exclude Standard</u>

Federal Rule of Civil Procedure 26(a)(2)(D) requires parties using the testimony of experts to "make these disclosures at the times and in the sequence that the court orders."   This district's Local Rules require that the party using the expert testimony "shall designate the expert sufficiently early in the discovery period."   LR 26.2(C), NDGa.   Timely disclosure ensures that the opposing party has the "opportunity to depose the expert and, if desired, to name its own expert sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery."   *Id.*

21

If a court determines that the disclosure rules have been violated, the court must then determine what, if any, sanctions are appropriate. *Cf. OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008). Rule 37(c)(1) provides the enforcement mechanism for violations of Rule 26(a), and states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*" Fed. R. Civ. P. 37(c)(1)(emphasis added). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009)(quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)(Evans, J.)).

In determining whether a failure to comport with Rule 26(a) is "substantially justified" or "harmless," some district courts have identified five factors to consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Cambridge Univ. Press v. Becker*, Civil Action No. 1:08-CV-1425-ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)(Evans, J.)(citing

22

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-CV-40-T-33MAP, 2009 WL 92826, at *3 (M.D. Fla. Jan. 14, 2009)). The Eleventh Circuit has neither accepted nor rejected those factors. It has employed a similar, but simpler, test in reviewing a district court's exclusion of the testimony of an improperly disclosed witness, considering "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004).

The Local Rules mandate that a party that fails to comply with the disclosure requirement "shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified." LR 26.2(C), NDGa. Local Rule 26.2(C) requires that the failure to disclose was "justified" if the party is to escape sanction, and makes no mention of whether a harmless failure to disclose is excusable. Some judges in this district have concluded that this requires the court to exclude the "harmless" part of the Rule 37(c)(1) criteria. *See Durkin v. Platz*, 920 F. Supp. 2d 1316, 1328 (N.D. Ga. 2013)(Batten, J.)("[T]he standard for striking untimely expert testimony is not whether the opposing party is prejudiced, but whether the proffering party's failure to comply was justified.");

23

*Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1195 (N.D. Ga. 2005)(Duffey, J.)("The [local] rule clearly provides Plaintiff must demonstrate her failure to comply was justified to avoid the exclusion of her expert witness.")  At least one judge has expressed less certainty.  *Cf. Vision Airlines, Inc. v. SST Air, LLC*, Civil Action No. 2:12-CV-00021-WCO, 2013 WL 6908935, at *3 n.1 (N.D. Ga. Feb. 27, 2013)(O'Kelley, J.)("As the court finds that the late disclosure in this case was neither substantially justified nor harmless, the court need not address this distinction between the local and federal rules.")

The Court proceeds by applying the three-part inquiry set out by the Eleventh Circuit in *Bearint*: "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify."  389 F.3d at 1353.  Because, as explained *infra*, the Court finds that defendants' failures to disclose Brown and Rizor are justified, it does not need to address the apparent discrepancy between the Local and Federal Rules.

**B.   Testimony of David G. Brown**

David G. Brown is a professional engineer with extensive experience in automobile accident investigation and reconstruction. (Brown Disc. [79-1] at 3-5.)  Defendants retained Brown "to conduct an analysis of the alleged speed of the impact between the vehicles

24

and to provide an opinion about whether or not certain eye witness testimony on the speed of the defendants' vehicle at the time of the occurrence was consistent with the available physical evidence." (Brown Disc. [79] at 1-2.)

    1. <u>Importance of the Testimony</u>

Brown's testimony is important, defendants contend, because of the unfortunate death of defendant Barger, the driver of the tractor-trailer, "near the end of the discovery period." (Defs.' Br. in Opp'n [82] at 1.) Defendants were planning to have Barger himself testify about his speed, but now, they "have no eye-witness testimony on the pre-impact speed of the vehicle." (*Id.* at 6.) Because the speed of the impact is important in determining what injuries might have followed from the collision, this testimony is vital. Defendants contend that it will substantiate Barger's deposition testimony and rebut plaintiff's and plaintiff's witnesses' testimony that the tractor-trailer was traveling 40 miles per hour or more at the time of impact. (*Id.* at 6-7.)

    2. <u>Reasons for Defendants' Failure to Disclose Earlier</u>

Defendants state that "[b]y the time that the defendants were made aware of Mr. Barger's passing it would not have been possible to disclose Mr. Brown as an expert within the time contemplated by Local Rule 26.2(C)." (*Id.* at 2.) The Suggestion of Death was filed on January 16, 2013. It is not clear from the record exactly when

25

Barger died, but it seems to have been at the very end of the scheduled discovery period.    For that reason, defendants were presumably unable to disclose Brown prior to the close of discovery, in accordance with Rule 26 and Local Rule 26.2.

      3.   Prejudice to Plaintiff

Local Rule 26.2(C) is designed "to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery."    LR 26.2(C), NDGa. The tardy disclosure of Brown requires plaintiff to consider deposing Brown and perhaps retain their own accident reconstruction expert. That is, while plaintiff was aware that the speed of the tractor-trailer would be an issue in this case, plaintiff has not had reason to anticipate that there would be testimony from an engineer, as opposed to lay eyewitnesses.

Although it is true that defendants learned of Barger's death approximately nine months before disclosing Brown as an expert, and should have perhaps moved more quickly to disclose him,[2] this delay

---

    [2]  The Court notes that the disclosure was made shortly after issuance of the magistrate judge's R&R recommending denial of defendants' motion for summary judgment.    Presumably, defendants thought that they might succeed on their pending summary judgment motion on causation, thereby rendering a determination of the tractor-trailer's speed unnecessary.

has not caused plaintiff any significant prejudice, as no trial date has been set and plaintiff will have an opportunity to depose Brown prior to trial.

### C. **Testimony of Randy F. Rizor**

Randy Rizor is a physician "retained by the defendants to conduct an analysis of [plaintiff's] reports of pain and the pain management treatment provided to [plaintiff] both before and after the subject occurrence." (Rizor Disc. [80] at 1.)   In particular, Rizor was retained to provide testimony relating to plaintiff's treatment by Dr. Schulze.   Defendants expect Rizor "to opine that there is no objective medical evidence that the symptoms reported by [plaintiff] in his right shoulder and arm were caused by the June 11, 2008 accident." (*Id.* at 1-2.)

### 1. Importance of the Testimony

The testimony of Rizor is important, as it gives defendants an opportunity to introduce expert testimony on the issue of plaintiff's ongoing pain management treatment provided by Dr. Schulze. (Defs.' Br. in Opp'n [82] at 11.)   Testimony on this subject is pertinent to issues that might emerge at trial, including plaintiff's history of pain medication use and possible abuse, and the consistency of plaintiff's medical treatment since the June 11, 2008 accident with the injuries allegedly caused by the accident. (*Id.* at 12.)

27

2.   <u>Reasons for Defendants' Failure to Disclose Earlier</u>

Plaintiff did not identify Dr. Schulze as a potential witness in his initial disclosures of October 19, 2011, even though he had received treatment from Dr. Schulze dating back to February, 2011. (*Id.* at 9.)  Defendants were made aware that Dr. Schulze provided some treatment to plaintiff--one injection and one pain medication prescription--only in the course of plaintiff's second deposition on July 2, 2012. (*Id.* and at Ex. 2.)  Plaintiff did not reveal, and the records provided during discovery did not indicate, the fact that plaintiff was continuing to receive treatment from Dr. Schulze.  By agreement, the parties deposed Dr. Schulze after the close of discovery, on March 19, 2013. (*Id.* at 10.)[3]  It was only at that time that defendants learned of plaintiff's ongoing treatment from Dr. Schulze.  Defendants argue that it was only with the deposition of Dr. Schulze that they were made aware of the need for expert testimony, as, before then, there had been no indication that plaintiff's continuing pain management treatment was a possible issue in the case. (Defs.' Br. in Opp'n [82] at 11.)

3.   <u>Prejudice to Plaintiff</u>

Plaintiff is in no position to complain about prejudice as it

_____

[3]  Defendants further suggest that plaintiff has violated Rule 26(e) in failing to disclose Dr. Schulze as a treating physician. (Defs.' Br. in Opp'n [82] at 9.)

was plaintiff's failure to disclose the continuing treatment by Dr. Schultze that caused defendants' delay in disclosing an expert to discuss the significance of that treatment.[4] As plaintiff caused the problem, he clearly cannot now complain about any prejudice that he may have suffered.

### D.   **Reopening Discovery**

The Court determines that defendants have justified their failure to disclose Brown and Rizor as testifying experts prior to the close of discovery.  In the interest of having all relevant testimony presented at trial, the Court orders that discovery be reopened for a limited period of **sixty days**, so that plaintiff may depose Brown and Rizor and procure their own experts on the issues of the speed of the tractor-trailer at the time of the collision and plaintiff's ongoing pain-management treatment.

### CONCLUSION

For the above reasons, the Court agrees with Judge Fuller's Report and Recommendation [76] and **DENIES** defendants' Motion for Summary Judgment [73].  The Court also **DENIES** plaintiff's Motion to Exclude Testimony [81] and **ORDERS** discovery to be reopened for **sixty**

---

[4]  This Court had previously directed plaintiff, in the wake of earlier discovery rules infractions, "to serve a disclosure relating to testimony of Dr. Keem or any other treating physicians that complies with Rule 26 within 21 days."  (Order [50] at 10-11)(emphasis added).  Plaintiff did not do that with regard to Dr. Schulze.

29

**(60) days** for the limited purpose of allowing plaintiff to depose Brown and Rizor and to conduct any related discovery.

SO ORDERED, this <u>24th</u> day of <u>MARCH</u>, 2014.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

30